UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**KIRK MENARD**                                                                                        **CIVIL ACTION**

**VERSUS**

**TARGA RESOURCES LLC**                                                             **NO: 19-00050-BAJ-SDJ**

RULING AND ORDER

Before the Court is the **Motion for Summary Judgment (Doc. 55)** filed by Defendant Targa Resources LLC.  Plaintiff Kirk Menard has filed a response in opposition (Doc. 65).  Defendant filed a reply (Doc. 68).  For the following reasons, the Motion is **DENIED**.

I.   FACTUAL BACKGROUND

This matter arises from allegations that Plaintiff was wrongfully terminated in retaliation for alerting his immediate supervisor of Defendant's alleged attempts to deceive the Louisiana Department of Environmental Quality ("LDEQ").  According to the Complaint, Plaintiff was employed by Defendant as an Environmental Safety & Health Specialist.[1]  (Doc. 14 at ¶ 4).  Plaintiff alleges that on October 5, 2018, he participated in a conference call with the operations team, during which time he informed company officials that the levels of total suspended solids ("TSS") in Defendant's septic tanks exceeded regulatory limits.  (*Id.* at ¶ 5).  Plaintiff asserts

---

[1] According to Plaintiff, the role of an Environmental Safety & Health Specialist is to identify and report violations of environmental and safety standards under state and federal law.  (Doc. 14 at ¶ 4).

1

that near the end of the call, Defendant's district manager, Perry Berthelot, asked Plaintiff to call him to discuss possible solutions to the high TSS levels. (*Id.* at ¶ 6). Plaintiff claims that despite being warned to be wary of Berthelot by other employees, he felt compelled to call him. (*Id.* at ¶ 7). Plaintiff avers that during the conversation, Berthelot encouraged him to dilute the septic system water samples with tap water to deceive the LDEQ. (*Id.* at ¶ 10). Plaintiff claims that he found Berthelot's suggestions to be inappropriate and possibly unlawful, and reported the conversation to his immediate supervisor, David Smith. (*Id.* at ¶¶ 11-14). Plaintiff claims that he did not dilute any of the water samples. (*Id.* at ¶ 12). Plaintiff avers that on October 10, 2018, he received a phone call from Jarrod Gregg, a safety supervisor, alleging that he had received a complaint of "inappropriate comments" and that on the next day, Plaintiff was fired. (*Id.* at ¶¶ 15-16). Plaintiff brought claims against Defendant for violations of the Louisiana Environmental Whistleblower Statute ("LEWS")[2].

## II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

---

[2] La. R.S. 30:2027.

After a proper motion for summary judgment is made, the nonmovant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal citations omitted). At that moment, the court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if "the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor," the motion for summary judgment must be denied. *Id.*

The nonmovant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotations omitted). Summary judgment is appropriate if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.  DISCUSSION

Claims made under the LEWS are analyzed under the *McDonnell Douglas* framework. *Breaux v. Rosemont Realty*, 768 F. App'x 275, 277–78 (5th Cir. 2019). Plaintiffs are first required to make out a prima facie case. (*Id.* at 278). In order for a plaintiff to establish a *prima facie* case of retaliation, he must show that: (1) he engaged in activity protected by the statute; (2) he suffered an adverse employment action; and (3) a causal connection existed between the protected activity in which he

engaged and the adverse action. *Bain v. Georgia Gulf Corp.*, 462 F. App'x 431, 433 (5th Cir. 2012).

If a plaintiff makes out a prima facie case, the burden of production shifts to the defendant to "articulate a legitimate, non-discriminatory reason for its decision to terminate him." *Breaux*, 768 F. App'x at 278 (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 (5th Cir. 2005)). If the defendant meets its burden, the burden of persuasion reverts to the plaintiff to show that the defendant engaged in retaliation by, for example, showing that the defendant's stated reason was pretextual. *Id.* The plaintiff "must establish that his . . . protected activity was a but-for cause of the alleged adverse action by the employer." *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)).

Defendant raises several arguments in support of its motion for summary judgment. First, Defendant argues that Plaintiff cannot establish a prima facie case because his reporting of Perry Berthelot's request to dilute water samples did not constitute a protected activity under the LEWS. Under Louisiana law, a plaintiff cannot recover under the LEWS where the reporting activity giving rise to the whistleblower claim was part of his normal job responsibilities. *English v. Wood Grp. PSN, Inc.*, 2015 WL 5061164, at *13 (E.D. La. Aug. 25, 2015). Defendant hired Plaintiff as an Environmental Safety and Health ("ES&H) Specialist. Plaintiff's job duties and responsibilities as an ES&H Specialist included "notifying [his] supervisor of any safety, health, or environmental issues" and "identifying and reporting

4

violations of environmental and safety standards under state and federal law." (Docs. 55-2 at 1; 65-1 at 1). During his deposition, Plaintiff testified that he thought that Berthelot asking him to dilute water samples was asking him to commit a crime. (Doc. 65-2 at 57-58). He then agreed that identifying and reporting violations of environmental and safety standards would include reporting someone who asked him to commit a crime. (*Id.* at 129-130). Based on Plaintiff's own testimony, the Court concludes that Plaintiff's reporting of Berthelot's request did not constitute a protected activity because it was part of his normal job responsibilities. *English*, 2015 WL 5061164, at *13.

Plaintiff argues that even if he were not protected under the LEWS for reporting Berthelot's request, he would still be protected for his refusal to participate in the illegal act of diluting the water samples. In support of his position, Plaintiff cites to *Cheramie v. J. Wayne Plaisance, Inc.*, 595 So. 2d 619, 624 (La. 1992) as authority for the proposition that the refusal to participate in illegal and environmentally damaging work is an extreme form of "complaint" and constitutes "complaining" under the LEWS.

Defendant takes issue with Plaintiff's argument because *Cheramie* was interpreting the LEWS before its amendment in 1991. At the time, the LEWS prohibited any "firm, business, private or public corporation, partnership, individual employer, or federal, state, or local governmental agency" from acting "in a retaliatory manner against an employee, acting in good faith, who *report[ed] or complain[ed]* about possible environmental violations." (*Id.* at 623 (citing LSA–R.S. 30:2027)

5

(emphasis added)).  The LEWS currently prohibits any "firm, business, private or public corporation, partnership, individual employer, or federal, state, or local governmental agency" from acting "in a retaliatory manner against an employee, acting in good faith, who . . . *[d]iscloses, or threatens to disclose* . . . an activity, policy, [or] practice of the employer . . . that the employee reasonably believes is in violation of an environmental law, rule, or regulation." La. Stat. Ann. § 30:2027 (emphasis added).

Plaintiff urges the Court to extend *Cheramie*'s holding to the current version of the LEWS and find that a refusal to participate in illegal and environmentally damaging work is a protected activity. Though the Louisiana Supreme Court has not weighed in on this issue, it has interpreted the *Cheramie* holding as "support[ing] a broad interpretation of the whistleblower statute." *Borcik v. Crosby Tugs, L.L.C.*, 2016-1372 (La. 5/3/17), 222 So. 3d 672, 677. In accordance with the Louisiana Supreme Court's guidance, this Court recognizes that a refusal to participate in illegal and environmentally damaging conduct is a protected activity under the LEWS. Thus, Defendant cannot prevail on its argument that Plaintiff has not articulated a protected activity.

Second, Defendant contends that Plaintiff cannot establish a prima facie case because temporal proximity alone is insufficient to establish a causal connection between the protected activity in which he engaged and the adverse action. However, the Supreme Court has held that when the period between the protected activity and the adverse employment action is very close, temporal proximity alone can establish

6

a prima facie case of retaliation. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (citing *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001)). Moreover, the Fifth Circuit has held that a period of two months is close enough to show a causal connection. *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (citing *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994–95 (5th Cir. 2005)). Here, Plaintiff alleges that he refused Berthelot's request to dilute the water samples on October 5, 2018 and was fired on October 11, 2018, six days later. Thus, Defendant's argument is unpersuasive.

Third, Defendant argues that its legitimate, non-retaliatory reasons for discharge were the true reasons for its decision because Plaintiff cannot demonstrate that the individuals who made the decision to terminate him were even aware of his protected conduct. A dispute of material fact exists as to who Plaintiff reported the misconduct. Plaintiff alleges that he reported Perry Berthelot's request to David Smith, his immediate supervisor. (Doc. 65-1 at 22). Defendant alleges that Plaintiff told Ted Keller, the area manager, that Berthelot instructed him to dilute water samples. (Doc. 55-2 at 2, 9). Plaintiff and Defendant agree that Plaintiff told Matthew Fitzgerald, an operator employed by Defendant, that Berthelot had asked him to alter a sample. (Doc. 65-1 at 22; 65-20 at 8; 68-1 at 5). What is undisputed is that neither Smith, Keller, nor Fitzgerald made the ultimate decision to terminate Plaintiff's employment. That individual was Jessica Keiser, Defendant's vice president. (Doc. 65-1 at 34; 65-15 at 36).

Defendant's argument overlooks the applicability of the cat's paw theory to

Plaintiff's case. Plaintiffs may use a cat's paw theory of liability when they cannot show that the ultimate decision maker harbored any retaliatory animus. *Zamora*, 798 F.3d at 331. Under this theory, a plaintiff must establish that the person with a retaliatory motive somehow influenced the decision maker to take the retaliatory action. (*Id.*). The Fifth Circuit has held that the cat's paw analysis is a viable theory of causation in the context of retaliation claims. (*Id.* at 332-33). Thus, the fact that Keiser was allegedly not aware of Plaintiff's protected conduct does not doom his case. At trial, Plaintiff must demonstrate that Smith, Keller, or Fitzgerald had retaliatory animus and used Keiser to bring about the intended retaliatory action. (*Id.* at 331). Given the disputes of material facts in this case, the Court cannot conclude that Plaintiff will be unable to do so as a matter of law.

Lastly, Defendant argues that Plaintiff cannot show that the reasons for his termination were pretextual. Defendant contends that Plaintiff was terminated for both engaging in inappropriate conduct and for performance issues. (Doc. 55-2 at 9). Regarding the alleged inappropriate conduct, Defendant suggests that Plaintiff showed Nick Richard, an outside operator, a picture of his fiancée's hemorrhoids in the control room. (*Id.* at 5). Plaintiff denies making inappropriate comments to other employees or contractors or showing anyone a picture of his fiancée's hemorrhoids. (Doc. 65-1 at 25-26). Thus, a dispute of material fact exists concerning one of Defendant's stated reasons for terminating Plaintiff. Under these circumstances, the Court cannot grant summary judgment in Defendant's favor.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion for Summary Judgment (Doc. 55)** is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion to Strike (Doc. 64)** is deemed **MOOT**.

Baton Rouge, Louisiana, this 17th day of June, 2020

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**