UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KIRK MENARD                                                    CIVIL ACTION

VERSUS

TARGA RESOURCES, LLC                                  NO. 19-00050-BAJ-SDJ

## RULING AND ORDER

On August 17, 2023, the United States Court of Appeals for the Fifth Circuit issued its mandate affirming this Court's March 31, 2022 Judgment in favor of Plaintiff Kirk Menard, and against his former employer Defendant Targa Resources, LLC. (Doc. 151). Now before the Court is Plaintiff's **Motion For Attorney Fees And Costs (Doc. 139)**, and Plaintiff's **Motion To Alter Or Amend Final Judgment Regarding Interest Owed On Award Of Lost Wages (Doc. 141)**. Defendant opposes only Plaintiff's request for attorneys' fees. (Doc. 143). For reasons to follow, Plaintiff's motion for attorneys' fees will be granted in part, Plaintiff's motion to amend the March 31 Judgment will be granted, and an amended judgment will be issued reflecting the relief set forth herein.

## I.    BACKGROUND

To recall, Defendant employed Plaintiff as an Environmental Safety and Health Specialist at its facility in Venice, Louisiana. On October 5, 2018, Defendant's District Manager, Perry Berthelot, instructed Plaintiff to dilute sewage samples in order to pass regulatory checks. Plaintiff refused and reported Berthelot's illegal directive to his supervisor, for which Plaintiff was fired. *See Menard v. Targa Res.,*

*L.L.C.*, 56 F.4th 1019, 1020-21 (5th Cir. 2023).

On January 10, 2019, Plaintiff initiated this action in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana, alleging retaliation in violation of the Louisiana Environmental Whistleblower Statute, La. R.S. § 30:2027 ("LEWS"). (Doc. 1-2; *see also* Doc. 14). Defendant removed Plaintiff's action to this District where, after two years of hard fought litigation, Plaintiff prevailed in his retaliation claim following a two-day bench trial. (*See* Docs. 122, 130, 134, 135). Prior to trial, Plaintiff defeated multiple dispositive motions, (*see* Docs. 37, 76), and engaged in multiple discovery and pre-trial evidentiary disputes, (*see* Docs. 50, 71, 115).

On March 31, 2022, the Court entered its judgment awarding Plaintiff lost wages totaling $119,586 (treble damages on six months of lost wages), various categories of lost benefits, and attorneys' fees in an amount to be determined by the Court. (Doc. 135). Relevant here, the March 31 Judgment did not expressly award Plaintiff interest on his lost wages, despite having expressly awarded Plaintiff interest for all categories of lost benefits. (*See id.*).

On April 11, 2022, Defendant filed its notice of appeal. (Doc. 137). Three days later, on April 14, 2022, Plaintiff filed his motion for attorneys' fees, costs, and legal expenses. (Doc. 139). On April 26, 2022, Plaintiff followed with his motion to alter the March 31 Judgment to make clear that his lost wages award was also subject to an award of interest. (Doc. 141). On April 28, 2022, Defendant filed its response, opposing Plaintiff's request for attorneys' fees, but stating no opposition to Plaintiff's

request for costs and expenses, or Plaintiff's request to amend the March 31 Judgment to reflect an award of interest on his lost wages award. (Doc. 143).

On August 17, 2023, the Fifth Circuit issued its mandate affirming the March 31 Judgment, (Doc. 151), clearing the way for the Court's consideration of Plaintiff's post-judgment motions.

## II.    ANALYSIS

The Court's analysis proceeds in two parts. First, the Court considers Plaintiff's request to amend the March 31 Judgment to expressly state that his award of lost wages is also subject to an award of interest, pursuant to Federal Rule of Civil Procedure ("Rule") 59(e). Second, the Court considers Plaintiff's request for award of attorneys' fees, costs, and legal expenses, pursuant to Rule 54(d).

### A. Plaintiff's unopposed request to amend the Court's March 31 Judgment to reflect an award of interest on Plaintiff's award of lost wages will be granted, pursuant to Rule 59(e)

"A Rule 59(e) motion calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004 (quotation marks omitted). "Rule 59(e) allows a party to direct the district court's attention to newly discovered material evidence or a manifest error of law or fact and enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Fitzmaurice v. United States*, No. 96-cv-3064, 2001 WL 306660, at *1 (S.D. Tex. Feb. 22, 2001) (Rainey, J.) (quoting *Aybar v. Crispin-Reyes*, 118 F.3d 10, 16 (1st Cir. 1997)); *see also Meghani v. Shell Oil Co.*, No. 00-cv-0547, 2000 WL 33993306, at *1 (S.D. Tex. Aug. 24, 2000) (Atlas, J.) (same, quoting *Divane v. Krull Elec. Co., Inc.*, 194 F.3d 845, 848 (7th Cir. 1999)).

3

"State law governs the award of prejudgment interest in diversity cases." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010) (quotation marks omitted). Relevant here, Louisiana law provides for "[l]egal interest … from date of judicial demand, on all judgments, sounding in damages, 'ex delicto.'" La. R.S. § 13:4203. Plaintiff's claim of retaliatory discharge is a tort action, *see Portie v. Devall Towing & Boat Serv., Inc.*, 637 So. 2d 1061 (La. 1994), and is therefore subject to prejudgment interest under § 13:4203.

Plaintiff specifically prayed for legal interest from the date of judicial demand. (Doc. 14 at p. 11). The Court's March 31 Judgment was obviously incomplete (and therefore incorrect) to the extent that it failed to state that Plaintiff's treble damages award of $119,586 for lost wages also is subject to interest. Further, the award of interest attaches to the whole (trebled) lost wages award. *Brown v. Catalyst Recovery of Louisiana, Inc.*, 2001-1370 (La. App. 3 Cir. 4/3/02), 813 So. 2d 1156, 1171.

In sum, absent any objection from Defendant, the Court finds that its March 31 Judgment was incomplete, and did not accurately reflect Plaintiff's lawful award of interest on his lost wages. Pursuant to Rule 59(e), the Court's March 31 Judgment will be amended to state that Defendant shall pay Plaintiff treble damages on six months of lost wages of $39,862 for a total of $119,586, *plus* interest from the date of judicial demand on the total (trebled) lost wages award.

### B. Plaintiff's unopposed request for costs and expenses will be granted, pursuant to Rule 54(d)(1)

Under Rule 54(d)(1), an award of costs to the prevailing party is almost (but not quite) automatic: "denial of costs is in the nature of a penalty for some defection

... in the course of the litigation," and therefore must be justified by a reasoned decision. *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985) (quoting *Walters v. Roadway Exp., Inc.*, 557 F.2d 521, 526 (5th Cir. 1977)); *see also Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1166 (11th Cir. 2017) ("Under Rule 54(d), there is a strong presumption that the prevailing party will be awarded costs." (quotation marks omitted)). Additionally, the LEWS expressly provides that a prevailing plaintiff may recover "all costs of preparing, filing, prosecuting, appealing, or otherwise conducting a law suit." La. R.S. § 30:2027(B)(1).

Plaintiff seeks an award of costs and expenses in the amount of $17,905.28. (Doc. 139 at 1). Plaintiff supports his request with declarations from counsel, and an itemized list and receipts showing that these expenses arose from the litigation, and are attributable to filing fees, postage, printing costs, court reporter deposition and transcript fees, travel expenses and accommodations, records requests, and trial transcripts. (*See* Doc. 139-2 at 3; *see also* Doc. 139-3 at 3-4, 15-36). Absent any objection from Defendant, the Court finds that all costs and expenses claimed by Plaintiff were necessarily obtained for use in the case, and are properly compensable under Rule 54(d)(1) and La. R.S. § 30:2027(B)(1). *See Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 429 (5th Cir. 2010) ("Costs related to the taking of depositions are allowed under § 1920(2) and (4) 'if the materials were necessarily obtained for use in the case.'" (citing authorities)); *Brown*, 813 So. 2d at 1170 (broadly construing § 30:2027(B)(1) to include "[c]osts of depositions not introduced at trial and travel costs associated with taking depositions"). The March 31 Judgment also will be amended

5

to reflect an award of costs and expenses to Plaintiff in the amount of $17,905.28.

### C. Plaintiff's request for attorneys' fees will be granted in substantial part, pursuant to Rule 54(d)(2)

Under Rule 54(d), a prevailing party generally may *not* recover attorneys' fees *unless* such fees and expenses are specifically provided by "statute, rule, or other grounds entitling the movant to the award." *See* Fed. R. Civ. P. 54(d)(2)(B)(ii). The LEWS expressly provides that a prevailing plaintiff is entitled to recovery of attorneys' fees. La. R.S. § 30:2027(B)(1). Accordingly, the March 31 Judgment includes a fee award, in an amount "to be determined by the Court pending Plaintiff's motion for attorney's fees." (Doc. 135).

Now, Plaintiff seeks a fee award totaling $428,263.50, which, Plaintiff explains, represents "a lodestar figure of $285,509.00 based [on] a total of 991.8 hours at the applicable rates set forth in ... the declarations of attorneys Eulis Simien, Jr. and Roy Bergeron, Jr. ..., plus an adjustment of an additional 50% of the lodestar figure." (Doc. 139).

Defendant concedes that the LEWS entitles Plaintiff to a fee award. (Doc. 143-5 at 9). Further, Defendant "does not dispute the reasonableness of Plaintiff's attorneys' [claimed hourly] rates." (*Id.* at 10). Still, Defendant raises three objections to Plaintiff's fee demand: (1) counsels' declarations and contemporary timesheets submitted in support of Plaintiffs' fee demand are "inadmissible hearsay"; (2) counsels' claim to compensation for 991.8 hours is unreasonable and should be reduced because certain time is "duplicative," related to travel, or arises from "unsuccessful, unnecessary, and unproductive tasks"; and (3) no evidence supports a

6

50% upward adjustment of the lodestar figure. (*Id.* at 6-22). Additionally, to the extent its objections are overruled, Defendant "requests the opportunity to conduct limited discovery into the billing records submitted by Plaintiff's counsel in support of his motion." (*Id.* at 22). The Court considers each of Defendant's objections, in turn.

### i.    Defendant's hearsay objection will be overruled

Defendant's hearsay objection is a non-starter. (Doc. 143-5 at 7). Unquestionably, "[a] federal district court may fix attorneys' fees on the basis of affidavits and may even do so on its own experience without any testimony." *Resol. Tr. Corp. v. Tassos*, 764 F. Supp. 442, 443 (S.D. Tex. 1990) (Kazen, J.) (citing authorities). This Court's Local Civil Rules expressly provide that "[i]n all cases where attorney's fees are sought, the party desiring to be awarded such fees shall submit to the Court a contemporaneous time report reflecting the date, time involved, and nature of the services performed. The report shall be in both narrative and statistical form and provide hours spent and justification thereof." M.D. La. LR 54(b)(1). Here, counsels' declarations and timesheets submitted in support of Plaintiffs' fee demand are specifically tailored to comply with the Local Rules. Even *assuming* that that the rule against hearsay applies at this stage, counsel attest to the accuracy of their timesheets and expense reports, further stating that all time, costs, and expenses were contemporaneously recorded, (Doc. 139-3 at 1-3, Doc. 139-4 at 1-3), thus satisfying the demands of the business records exception, Fed. R. Evid. 803(6). *E.g.*, *Whatley v. Creditwatch Servs., Ltd.*, 2014 WL 1287131, at *3 (E.D. Tex. Mar. 31, 2014) (Schell, J.) (overruling defendant's hearsay objection to attorney affidavits and timesheets submitted in support of fee demand, where attorney

affidavits stated "that the time entries are accurate and were contemporaneously entered into the firm's computer database"). Defendant's hearsay objection is overruled. *E.g.*, *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980) ("We perceive no error in the use of affidavits for [determining reasonable attorneys fees]. Indeed, a district judge may fix attorneys fees on the basis of his own experience without the assistance of any testimony." (citations omitted)); *Advocacy Center v. Cain*, No. 12-cv-00508, 2014 WL 1246840, at *3-*6 (M.D. La. Mar. 24, 2014) (Jackson, J.) (awarding attorney fees and costs based on attorney affidavits identifying experience and rates, plus timesheets).

### ii.    "Lodestar" standard

The parties agree that the Fifth Circuit's "lodestar" analysis determines the reasonableness of Plaintiff's fee request. A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). After making this calculation, the Court may decrease or enhance the lodestar based on the relative weights of the twelve factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Id.*

> The factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Id.* (citing *Johnson*, 488 F.2d at 717-19).

Importantly, a lodestar enhancement is appropriate "only in certain exceptional cases where the prevailing party demonstrates that the enhancement is necessary to make the lodestar reasonable." *Cooper v. Pentecost*, 77 F.3d 829, 833 (5th Cir. 1996). Moreover, the lodestar may *not* be enhanced due to a *Johnson* factor "if the creation of the lodestar award already took that factor into account. Such reconsideration is impermissible double-counting." *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999).

### a.  Reasonable hourly rates

Plaintiff proposes a fee award based on the following hourly rates: Mr. Simien, a named partner at the Simien & Simien firm, with 40 years of legal experience in federal and state courts throughout the Gulf South, $400/hour, (Doc. 139-3 at 2); Mr. Bergeron, a senior attorney at the Simien & Simien firm, with 12 years of legal experience in federal and state courts in Louisiana and Mississippi, $300/hour; paralegals, $90/hour. Again, Defendant does not dispute the reasonableness of these rates in the local legal market. (Doc. 143-5 at 10). Accordingly, the Court approves Plaintiff's proposed hourly rates without adjustment.

### b.  Reasonable hours expended

Plaintiff's proposed fee award is based on 991.8 hours claimed to have been expended in the course of litigating this matter, consisting of 161.6 hours claimed by Mr. Simien, 696.0 hours claimed by Mr. Bergeron, and 134.1 hours claimed by two paralegals. (*See* Doc. 139-2 at 7). Defendant counters: (1) Mr. Bergeron improperly

claims 66 hours that are duplicative of hours expended by Mr. Simien, (Doc. 143-5 at

13); (2) Mr. Simien's and Mr. Bergeron's "time spent traveling" should be reimbursed

at only 50% of their regular hourly rates, (*id.* at 14-15); and (3) all hours related to

Plaintiff's unsuccessful bid to resist "discovery of the photograph" that Defendant

claimed was the basis of Plaintiff's termination should be stricken, (*id.* at 15).

### 1.  Duplicative hours

First, Defendant complains that Mr. Bergeron exercised unreasonable "billing

judgment" for having claimed 66 hours related to preparing for, traveling to, and

attending 13 depositions also attended by Mr. Simien. The Court cannot agree.

No rule prohibits multiple attorneys from billing time related to attendance at

the same deposition. *See Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 768

(5th Cir. 1996) (affirming award of attorney fees based, in part, on hours claimed by

multiple attorneys for the same hearings and depositions). Instead, whether to allow

or discount "duplicative" time is simply a question of whether the "particular hours

claimed were reasonably expended." *Id.* (quotation marks omitted).

> If more than one attorney is involved, the possibility of duplication of
> effort along with the proper utilization of time should be scrutinized.
> The time of two or three lawyers in a courtroom or conference when one
> would do, may obviously be discounted.

*Id.*

Notably, *all* 13 depositions that Defendant complains of involved witnesses

that appeared on Defendant's list for trial. (*Compare* Doc. 143-5 at 12, *with* Doc. 74

at 13-19). Five of these witnesses—Plaintiff Kirk Menard, Theodore Keller, Nicholas

Richard, Perry Berthelot, and Tricia Dodson—provided live testimony at trial, (Doc.

122, Doc. 130), seven more—Elizabeth Hawkins, Jarrod Gregg, Jordie Ancalade, Keith Adams, Jasper Harvey, Tony Williams, and Dawn Strickland—were designated to appear by deposition, (Doc. 74 at 19-20). Mr. Bergeron represented Plaintiff from start to finish, and plainly pulled the laboring oar, drafting multiple pleadings and oppositions to dispositive motions, (*e.g.*, Doc. 1-2 at 9; Doc. 14 at 12; Doc. 20 at 11; Doc. 65 at 22), appearing at multiple conferences, (*e.g.*, Doc. 24; Doc. 27; Doc. 44), examining multiple witnesses at trial, (*see* Doc. 123 at 3; Doc. 124 at 3), and even drafting multiple briefs on appeal to the Fifth Circuit, (*see Menard v. Targa Resources*, No. 22-30178, Doc. 33, Doc. 79). Plainly, Mr. Bergeron's familiarity with the witness testimony provided at these depositions was critical to his factual understanding of the case.

On this record, and given Mr. Bergeron's substantial contribution to the outcome of this case, the Court easily determines that his attendance at these depositions was appropriate and reasonable. Defendant's objection is overruled. *E.g.*, *Walker*, 99 F.3d at 768 (affirming fee award that included "duplicative billings" where the district court "specifically considered each duplication and found it reasonable"); *Ball v. Leblanc*, No. 13-cv-00368, 2015 WL 5749458, at *7 (M.D. La. Sept. 30, 2015) (Jackson, J.) (overruling objections to charges for multiple attorneys to attend pretrial conference and other tasks, and recognizing that "[l]awyers regularly collaborate in preparation for trial"); *Coe v. Chesapeake Expl., LLC*, No. 09-cv-290, 2011 WL 4356728, at *4 (E.D. Tex. Sept. 15, 2011) (Ward, J.) ("[H]aving more than one timekeeper attend depositions or meetings was reasonable in this case."), *aff'd* 695

F.3d 311 (5th Cir. 2012).

### 2. Travel time

Next, Defendant objects that Mr. Simien and Mr. Bergeron each unreasonably billed their travel time at their full hourly rates.

The Fifth Circuit affords the Court discretion to reduce an attorney's hourly rate for travel time, particularly when the time claimed is "inadequately documented, excessive, or duplicative." *See Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993). Still, "reasonable attorney's fees generally include 'reasonable travel time billed at the same hourly rate as the lawyer's normal working time' because an attorney's travel time on behalf of one client represents 'an opportunity cost that is equal to the fee he would have charged [to] another client if he had not been traveling.'" *Taylor v. Washington Mut. Inc.*, No. 3:04-cv-0521, 2015 WL 5024508, at *9 (W.D. La. Aug. 24, 2015) (Drell, J.) (quoting *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984)).

Defendant asserts that counsels' billing records "contain 147 hours of time billed between Mr. Eulis Simien and Mr. Roy Bergeron—totaling $47,000.00—for travel-related entries." (Doc. 143-5 at 13). Defendant fails to provide any explanation for how it arrives at this number, such as an itemized list of the alleged "travel time" billing entries. Still, this statement, unadorned, raises eyebrows, given that counsels' travel appears to have included only trips for depositions in New Orleans (a 1.5 hour drive from Baton Rouge), Lake Charles (a two hour drive from Baton Rouge), and Houston (a one hour flight from Baton Rouge). (*See* Doc. 139-3 at 10; Doc. 139-4 at 9-11).

A closer look, however, reveals Defendant's sleight of hand: Defendant's "travel

time" calculation is inclusive of *all* counsels' hours claimed for a particular day when, plainly, counsels' billing records reflect that only a *portion* of that day was reserved for travel. (*See* Doc. 143-5 at 14).

The Court will not succumb to Defendant's parlor tricks. Mr. Simeon's billing records reflect six travel days, each of which *also* included attending at least one deposition. (Doc. 139-3 at 10). On the longest of these days—July 30, 2019—Mr. Simeon billed 12 hours, which included a *roundtrip* to Houston. (*Id.*). Mr. Bergeron's billing records reflect nine travel days, each of which *also* included attending at least one deposition. (Doc. 139-4 at 9-11). On the longest of these days—August 6, 2019— Mr. Bergeron billed 12 hours, which also included a *roundtrip* to Houston. (Doc. 139-4 at 10). Only *one* of counsels' travel days was related to a deponent that did not ultimately appear on Defendant's trial list—specifically, when Mr. Bergeron traveled to Lake Charles on December 10, 2019 to attend the deposition of Matt Fitzgerald. (*Compare* Doc. 74 at 13-19, *with* Doc. 139-3 at 10, *and* Doc. 139-4 at 9-11). As such, the Court finds that counsels' travel was necessary, *and* necessarily came at the expense of regular billing time that counsel could have devoted to other clients. A reduction of counsels' billing rates is not warranted, and Defendant's objection is overruled. *E.g.*, *Taylor*, 2015 WL 5024508, at *9-*10 (declining to reduce counsel's fee award to account for "travel time," explaining that "just because an attorney travels of *necessity* does not justify the reduction of his or her billing time" (emphasis in original)).

### 3. Unproductive tasks

Finally, Defendant objects to reimbursement of 41.7 hours related to

Plaintiff's unsuccessful bid to resist "discovery of the photograph" that Defendant claimed was the basis of Plaintiff's termination, consisting of 7.0 hours claimed by Mr. Simien and 34.7 hours claimed by Mr. Bergeron. (Doc. 143-5 at 15).

"When using the lodestar method to award attorney fees, courts routinely deduct time spent on unsuccessful, unfounded or unnecessary pleadings, motions, discovery requests and memoranda." *White v. Imperial Adjustment Corp.*, No. 99-cv-3804, 2005 WL 1578810, at *11 (E.D. La. June 28, 2005) (Engelhardt, J.) (citing authorities). Here, the photograph at issue depicted Plaintiff's pregnant fiancé's hemorrhoids. (*See* Doc. 50 at 1-2). Plaintiff shared the photograph with his co-workers in the workplace, which, Defendant contended, violated its workplace policies and was cause for Plaintiff's termination. (*See id.*). Throughout the case, Defendant's affirmative defenses included that it fired Plaintiff for "a legitimate, non-retaliatory, and non-pretextual manner." (Doc. 42 at 5). Defendant made multiple requests for production of the photograph, and, when Plaintiff refused to yield, filed a motion to compel. (Doc. 41).

The Court has already devoted too much time to the issue of whether or not the photograph was discoverable. Plainly it was, as determined first by the Magistrate Judge in his January 16, 2020 order granting Defendant's motion to compel, (Doc. 50), and *again* by this Court in its May 21, 2020 order denying Plaintiff's appeal of the Magistrate Judge's ruling, (Doc. 71). Plaintiff wasted considerable time and resources—Defendant's *and* the Court's—opposing what was plainly a legitimate and reasonable (albeit embarrassing) discovery request. Indeed, the Court expressly

14

noted in its May 21 Order that Plaintiff's appeal was merely a "rehash" of the same unpersuasive arguments originally set forth in his opposition to Defendant's motion to compel. (Doc. 71 at 3).

On this record, the Court finds that counsels' reasonable hours should *not* include any hours related to Plaintiff's *unreasonable* failure to produce the photograph. Defendant states, and Plaintiff does not dispute, that Mr. Simien and Mr. Bergeron devoted 7.0 hours and 34.7 hours to this unproductive task, respectively. (Doc. 143-5 at 15). Counsels' reasonable hours will be reduced accordingly.

### c.  Lodestar rate

In summary, having considered Defendant's objections, and after making the foregoing reductions in hours, the lodestar amount of reasonable hours multiplied by the reasonable rates set forth above is as follows:

| | | |
|---|---|---|
| Eulis Simien, Jr. | 154.6 hours @ $400/hour  = | $61,840 |
| Roy Bergeron, Jr. | 661.3 hours @ $300/hour  = | $198,390 |
| Paralegals | 134.1 hours @ $90/hour   = | $12,069 |
| | **Total:** | **$272,299** |

### d.  Lodestar adjustment

Finally, the Court must determine whether to decrease or enhance the lodestar. *Migis*, 135 F.3d at 1047. Plaintiff contends that counsel is entitled to a 50% enhancement based on the following *Johnson* factors: (2) novelty and difficulty; (3) skill; (4) preclusion of other employment; (8) the amount involved and the result obtained; (9) experience and reputation of counsel; and (10) the "undesirability" of the

case. (Doc. 139-2 at 13-19).

Defendant does *not* seek a reduction of the lodestar, but opposes an enhancement, noting that the Supreme Court and the Fifth Circuit each have substantially restricted the degree to which the *Johnson* factors may be used to increase the lodestar, and that, in any event, Plaintiff has failed to identify "any specific evidence" supporting "*any* upward adjustment ..., much less an upward adjustment by an *additional 50%*." (Doc. 143-5 at 16-17 (emphasis in original)).

Controlling authority greatly limits the Court's discretion to enhance the lodestar based on *five* of the six *Johnson* factors identified by Plaintiff—specifically, factors (2) novelty and difficulty; (3) skill; (4) preclusion of other employment; (8) the amount involved and the result obtained; and (9) counsel's reputation and ability— because there is a "strong presumption" that the lodestar already accounts for these factors. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010); *see Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 771 & n.12 (5th Cir. 1996) (instructing that "[t]he Supreme Court has limited greatly the use of the second, third, eighth, and ninth factors" to enhance the lodestar (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)); *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) ("[T]his Court [has] observed that 'preclusion of other employment' is generally subsumed within the lodestar amount."). Thus, "[e]nhancements based upon these factors are only appropriate in rare cases supported by specific evidence in the record and detailed findings by the courts." *See Walker*, 99 F.3d at 771–72 (quotation marks omitted); *accord Heidtman*,

16

171 F.3d at 1043.

Plaintiff's claim for an adjustment based on *Johnson* factors 2, 3, 4, 8, and 9, is conclusory, amounting to an assertion that Mr. Simeon and Mr. Bergeron each are good at what they do, assumed the risk that they would not ultimately be successful, fought hard for the result they obtained, and defeated multiple dispositive motions before prevailing at trial. (*See* Doc. 139-2 at 15-19). The same can be said of practically all contingency fee arrangements. These factors are presumably accounted for by the lodestar, and Plaintiff has not provided "specific evidence" to overcome this presumption. *See Walker*, 99 F.3d at 771–72 (vacating 20% lodestar enhancement where counsel failed to support its request with reasonable specificity).

This leaves only the tenth *Johnson* factor, the "undesirability" of the case. To be sure, the Court's discretion when assessing the "undesirability" factor is not so obviously constrained as when assessing the other *Johnson* factors. Still, however, in support of an "undesirability" enhancement, Plaintiff essentially re-packages its arguments regarding the prior factors, stating that counsel assumed "significant risk in taking on this case, and that the litigation was "difficult," "with hotly contested factual and legal disputes that had to be overcome." (Doc. 139-2 at 19). Again, such risk is already baked into the lodestar analysis. More fundamentally, such risk simply is not "the type of undesirability contemplated by *Johnson*," which aimed the "undesirability" factor to encourage and compensate civil rights attorneys facing social and economic backlash for their professional efforts to eradicate discrimination. *See Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, No. 17-cv-491, 2020 WL

17

375596, at *10 (E.D. La. Jan. 23, 2020) (Ashe, J.) (quoting *Martinez v. Refinery Terminal Fire Co.*, No. 11-cv-00295, 2016 WL 4594945, at *9 (S.D. Tex. Sept. 2, 2016) (Gonzales Ramos, J.); *see also Cooper*, 77 F.3d at 833-34 (affirming denial of enhancement based on undesirability where, despite general negative stigma associated with prisoner cases, attorneys were not subjected to oppressive, unpleasant, or intimidating conditions).

In sum, Plaintiff has failed to show that this is the sort of "exceptional" case that warrants a lodestar enhancement, and his request for an enhancement is denied. *Cooper*, 77 F.3d at 833. A lodestar fee of $272,299 reasonably compensates Plaintiff's counsel for their work. *See id.* The March 31 Judgment will be amended accordingly.

### D. Defendant's request for additional discovery will be denied

Based on Defendant's concessions regarding the reasonability of counsels' rates, the Court's findings regarding the reasonability of counsels' hours, and the Court's election not to enhance the lodestar, the Court further finds that additional discovery will not aid the Court's adjudication of Plaintiff's fee demand. As such, Defendant's request for "limited discovery into the billing records submitted by Plaintiff's counsel in support of his motion" is denied. (*See* Doc. 143-5 at 22).

### III.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion For Attorney Fees And Costs (Doc. 139)** be an is hereby **GRANTED IN PART**, as set forth herein.

**IT IS FURTHER ORDERED** that Plaintiff's **Motion To Alter Or Amend Final Judgment Regarding Interest Owed On Award Of Lost Wages (Doc.**

141) be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the Court's March 31 Judgment be and is hereby **AMENDED** in favor of Plaintiff, and against Defendant, to reflect the following:

- Defendant shall pay Plaintiff treble damages on six months of lost wages of $39,862 for a total of $119,586, *plus* interest from the date of judicial demand on the total (trebled) lost wages award;

- Defendant shall pay Plaintiff's reasonable costs and expenses of $17,905.28, as determined herein.

- Defendant shall pay Plaintiff's reasonable attorneys' fees in the amount of $272,299, as determined herein.

Separately, the Court will issue an amended judgment that is consistent with the relief set forth herein.

Baton Rouge, Louisiana, this 31ˢᵗ day of August, 2021

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

19